# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * | | |
| CHELSEA BOSSENBROEK, | * | |
| | * | No. 17-122V |
| Petitioner, | * | Special Master Christian J. Moran |
| v. | * | |
| | * | |
| SECRETARY OF HEALTH | * | Filed: September 4, 2018 |
| AND HUMAN SERVICES, | * | |
| | * | Discovery, social media |
| Respondent. | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * | | |

## PUBLISHED ORDER DENYING MOTION TO QUASH[1]

The parties dispute whether the petitioner, Chelsea Bossenbroek, is required to produce her social media posts. For the reasons explained below, she is.

Ms. Bossenbroek alleges that the administration of the flu vaccine, on October 22, 2015, caused her ongoing shoulder injury that "negatively impacts" her ability to care for her children. Pet. at 1; exhibit 18 at 1 (petitioner's supplemental affidavit). Although she is alleging an injury that started in October 2015 and has continued to the present, Ms. Bossenbroek has no medical records that document the status of her shoulder between early December 2015 and early January 2017. Resp't's Rep. at 3. The lack of medical records for this time period constrains Ms. Bossenbroek's ability to establish that the vaccine-caused injury lasted more than six months. See 42 U.S.C. § 300aa-11(c)(1)(D).

The parties discussed the lack of contemporaneously created medical records in a status conference. To help substantiate Ms. Bossenbroek's claim, respondent requested the production of her social media posts, from January 2015 until present. Order, issued May 2, 2018.

Ms. Bossenbroek sought relief from this order. She argued that requiring the production of her social media posts from January 2015 until present is overly-broad and an unwarranted invasion of privacy. Pet'r's Status Rep., filed June 18, 2018. Acting through counsel, Ms. Bossenbroek represented that none of the posts discuss Ms. Bossenbroek's shoulder pain or injury. Id. The undersigned treated Ms. Bossenbroek's status report as a motion to exclude,

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this order on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

denied said motion, and ordered petitioner to file her social media posts. Order, issued June 21, 2018. The undersigned noted that Ms. Bossenbroek may renew her motion to exclude following the submission of the social media posts. Id.

Instead, Ms. Bossenbroek moved to quash the order to file her social media posts on June 28, 2018. Pet'r's Mot. Quash. Ms. Bossenbroek maintained that the production of all her social media posts from January 2015 to present is an "unwarranted invasion of privacy" because it is a "release [of] the most private and sensitive details of all aspects of her life." Id. at 6. Moreover, Ms. Bossenbroek acknowledges that the information the posts could provide is "potentially relevant" but still views it as an overly-broad request and a "fishing expedition." Id. at 6-7.

Furthermore, Ms. Bossenbroek argues that her privacy interest and the privacy interests of people she mentions in her posts outweigh the "government's desire to probe each and every aspect of petitioner's personal life." Id. at 8. Ms. Bossenbroek stated that her "privacy is to be strictly protected," to promote "Congress' intent," even if the "non-specified evidence may be potentially relevant." Id. at 9. Ms. Bossenbroek proposed a procedure in which the Chief Special Master would appoint another special master to review the social media posts in camera, for relevancy, to protect the undersigned from being biased by the posts. Id. at 11. Lastly, Ms. Bossenbroek argues that it would be detrimental to judicial economy to require the production of social media posts in the Vaccine Program. Id. at 12.

On July 5, 2018, the undersigned suspended Ms. Bossenbroek's production date and ordered respondent to respond by July 12, 2018. Order, issued July 5, 2018.

Respondent maintained his request for social media posts. Resp't's Resp., filed July 12, 2018. Respondent states that the social media posts may include photographs of Ms. Bossenbroek during the relevant time period and "are therefore directly relevant to the claims at issue." Id. at 8. Respondent argues that "Vaccine Act explicitly safeguards personal material." Id. at 9. Lastly, respondent explains that the "request for a relatively wide period (2015-2018) is based on petitioner's claim of ongoing injury, and interest in obtaining information in a cost-effective and relatively informal manner . . . given the absence of other documentary evidence to substantiate petitioner's condition during the relevant period." Id. at 10.

The undersigned held a status conference on July 27, 2018. During the status conference, Ms. Bossenbroek's counsel stated that the production of the social media is over 300 pages, and that some social media posts include pictures, while others include text, or a combination of both. Petitioner's counsel stated that she possesses the posts and reviewed such, but nothing appeared relevant to her. Ms. Bossenbroek reiterated her concern over the overly-broad production request.

However, respondent stated that given the nature of the ongoing injury alleged and Ms. Bossenbroek's inability to breastfeed her children, the social media posts are directly relevant to the claim. Respondent also stated that a document production of that size is no different from producing medical records. The parties discussed the possibility of narrowing the request and instead of January 2015, respondent suggested narrowing the parameters of the production to be two months prior to the vaccination (August 2015) until present. Lastly, respondent stated his

request is tailored to the case and that Ms. Bossenbroek could assert privileges after the filing of the posts.

* * *

Having considered Ms. Bossenbroek's arguments and proposition, the undersigned denies Ms. Bossenbroek's motion to quash for the following reasons.

For discovery requests in the Vaccine Program, the Vaccine Act provides that a special master may require "such evidence as may be reasonable and necessary," may require "the submission of such information as may be reasonable and necessary," and may require "the testimony of any person and the production of any documents as may be reasonable and necessary." 42 U.S.C. § 300aa–12(d)(3)(B). Moreover, Vaccine Rule 7 permits parties to move, during a status conference, for additional discovery procedures set forth in the Rules of the Court of Federal Claims, if the evidence is insufficient, and the movant must include the reasons why the current informal discovery techniques have been insufficient. For special masters to make well-informed decisions, the Federal Circuit held that ordering the production of supplemental information is well within special masters' authority over discovery proceedings. See Simanski v. Sec'y of Health & Human Servs., 671 F.3d 1368, 1380-81 (Fed. Cir. 2012); Whitecotton v. Sec'y of Health & Human Servs., 81 F.3d 1099, 1108 (Fed. Cir. 1996) (noting that "the permissible scope of the special master's inquiry is virtually unlimited").

The social media posts are reasonable and necessary for the undersigned to see if Ms. Bossenbroek's claim can be substantiated. Ms. Bossenbroek contends that the production of her social media posts since January 2015 is overly broad and nothing more than a "fishing expedition." Pet'r's Mot. Quash at 6. However, as noted above, Ms. Bossenbroek admitted that the posts are "potentially relevant." Pet'r's Mot. Quash at 6-7. As for the necessity of the posts, respondent explained, in line with the Vaccine Guidelines,[2] how the social media posts are reasonably and directly relevant to establishing the severity of the ongoing injury Ms. Bossenbroek alleges. Resp't's Resp. at 8. The social media posts are necessary for establishing the six-month severity requirement that her medical records fail to do. Correspondingly, the remaining posts are helpful for the remainder of the undocumented time period where she asserts she experienced an ongoing injury, and the social media posts are also helpful if the case proceeds to the damages phase.

Moreover, the reasonableness of the request takes into account the relative burden in producing the information. See In re Claims for Vaccine Injuries Resulting in Autism Spectrum Disorder or a Similar Neurodevelopmental Disorder, 2004 WL 1660351, at *8-9 (Fed. Cl. Spec. Mstr. July 16, 2004) (stating special masters "must consider the burden on the party who would be required to testify or produce documents" and holding the vaccine manufacturer's documents were not necessary). Unlike the third party manufacturers that In re Claims considered, Ms.

---

[2] The Vaccine Guidelines state that "entries in various social media . . . made at or near the time of the injury claimed may provide information relevant to establishing onset or severity of an injury. Such videos and files should be located and preserved, and their existence reported to the court." Section II, Chapter 3, ¶ 10.

3

Bossenbroek, as the petitioner who initiated this proceeding, has relatively little standing to complain that the Secretary is investigating unrelated aspects of her life.  Ms. Bossenbroek claimed that the vaccine-induced shoulder injury interfered with her ability to breastfeed her children, and by claiming so, she has put aspects of her personal life at issue.  The Secretary should be allowed to explore the accuracy of this allegation.  Ms. Bossenbroek also has not argued that the production is burdensome in the sense of being difficult to obtain the information.  Her counsel's representation, during the July 27, 2018 status conference, that she reviewed the social media posts and that they are approximately 300 printed pages demonstrate that Ms. Bossenbroek has the capacity to access the information she presented on social media.  See Pet'r's Mot. Quash at 3.  Thus, the undersigned finds the social media posts reasonable and necessary for the prosecution of petitioner's claim and thus, orders the production of the social media posts because petitioner's filed medical records do not sufficiently substantiate her alleged ongoing injury.

Beyond arguing about the relevance of her social media posts, Ms. Bossenbroek appears to present two arguments to excuse her production of this material.  First, Ms. Bossenbroek asserts a general right of privacy, but she has not established that there is a right of privacy with regards to the production of social media.  See Impson v. Dixie Elec. Membership Corp., No. 14-632-JWD-RLB, 2015 WL 9413122, at *4 (M.D. La. Dec. 22, 2015) (holding that even if someone maintains a private profile, the content is shared with other third-parties creating no privacy expectations); E.E.O.C. v. Simply Storage Mgmt., LLC, 270 F.R.D. 430, 437 (S.D. Ind. 2010) (noting that although parties might be embarrassed by the production of social networking posts, this concern is outweighed by the fact that the posts have already been shared with other people and that disclosure of the posts are limited by a protective order).

Ms. Bossenbroek attempts to ground her right to privacy in the Vaccine Act.  She states that Congress intended to protect the sensitive information of petitioners in the Program.  Pet'r's Mot. Quash at 9.  However, Ms. Bossenbroek conflates different aspects of the Vaccine Act.  The Vaccine Act states:

(A) Except as provided in subparagraph (B), information submitted to a special master or the court in a proceeding on a petition may not be disclosed to a person who is not a party to the proceeding without the express written consent of the person who submitted the information.

(B) A decision of a special master or the court in a proceeding shall be disclosed, except that if the decision is to include information—

   (i)   which is trade secret or commercial or financial information which is privileged and confidential, or

   (ii)  which are medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy, and if the person who submitted such information objects to the inclusion of such information in the decision, the decision shall be disclosed without such information.

42 U.S.C. § 300aa–12(d)(4) (emphasis added).

Although Ms. Bossenbroek references Section 12(d)(4)(B), the more appropriate reference is Section 12(d)(4)(A) because Section 12(d)(4)(B) places potential limits on what can be disclosed in a special master's public decision. Section 12(d)(4)(A) sets out Congress' concerns regarding the privacy of information petitioners in the Vaccine Program submit as evidence. Under Section 12(d)(4)(A), Congress permits the disclosure of evidentiary filings only with petitioners' written consent. In Ms. Bossenbroek's case, her social media posts will remain sealed, if she does not provide written consent to others. In sum, Ms. Bossenbroek misinterprets Section 14(d)(4)(A)-(B) by suggesting that her social media posts are so similar to medical files that Congress recognized the production of social media as an unwarranted invasion of privacy.

Second, Ms. Bossenbroek is concerned about the undersigned's possible bias upon his review of her social media posts. It is difficult to imagine what Ms. Bossenbroek posted that leads her to assert that her postings are so inflammatory that they will prevent a judicial officer from acting fairly. However, after producing the social media posts, she may make a motion for recusal identifying the alleged sources of bias. See Withrow v. Larkin, 421 U.S. 35, 47 (1975) (noting that a general assertion of judicial bias because of pre-trial involvement is lacking and this involvement does not thwart well-reasoned and unbiased decisions of fact or entitlement); Bieber v. Dep't of the Army, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002).

Because the Secretary proposed a more restricted period of time, the undersigned orders the filing of the social media posts to range from August 1, 2015, until July 31, 2018. The undersigned previously informed Ms. Bossenbroek that she may renew her motion to exclude following the submission of her posts. Order, issued June 21, 2018; see Navajo Nation v. United States, 106 Fed. Cl. 753, 755-56 (2012) (ordering the production of social media posts for e-discovery and allowing parties to assert privilege afterwards). Ms. Bossenbroek still may take advantage of this option.

Accordingly, the following is ORDERED:

Ms. Bossenbroek shall file her social media posts from August 1, 2015, until July 31, 2018, by **Friday, September 14, 2018**.

Any questions regarding this order shall be directed to my law clerk, Andrew Schick, at (202) 357-6360.

**IT IS SO ORDERED.**

s/Christian J. Moran
Christian J. Moran
Special Master