# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * * * * *

CHELSEA BOSSENBROEK,    *

         *

     Petitioner,    *

v.           *

          *

SECRETARY OF HEALTH   *

AND HUMAN SERVICES,   *

          *

     Respondent.   *

* * * * * * * * * * * * * * * * * * * * *

No. 17-122V

Special Master Christian J. Moran

Filed: April 3, 2020

Compensation, SIRVA, pain and suffering, discount rate

Leah V. Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for petitioner;
Linda S. Renzi, United States Dep't of Justice, Washington, DC for respondent.

## DECISION AWARDING COMPENSATION[1]

    Chelsea Bossenbroek is entitled to compensation from the Vaccine Program because a flu vaccination caused her a shoulder injury related to vaccine administration (SIRVA). The parties dispute the reasonable amount of compensation, particularly the compensation for pain and suffering. After considering the Vaccine Act, appropriate precedent inside and outside of the

---

[1] Because this decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). This means the decision will be available to anyone with access to the internet (http://www.cofc.uscourts.gov/aggregator/sources/7). In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material before posting the decision.

Vaccine Program, as well as evidence here, the undersigned awards Ms. Bossenbroek $62,901.49.

## I.   <u>Vaccine Act</u>

Congress enacted the Vaccine Act "[t]o stabilize the vaccine market and facilitate compensation." <u>Bruesewitz v. Wyeth LLC</u>, 526 U.S. 223, 228 (2011). While promoting these goals, this legislation contains a series of limitations and trade-offs. <u>Zatuchni v. Sec'y of Health & Human Servs.</u>, 516 F.3d 1312, 1322 (Fed. Cir. 2008).

Some of those compromises appear in the section defining the scope of compensation available to petitioners. 42 U.S.C. § 300aa–15. Within section 15, paragraph (a) authorizes types of compensation available. <u>Heinzelman v. Sec'y of Health & Human Servs.</u>, 681 F.3d 1374, 1379 (Fed. Cir. 2012). Within paragraph (a), four numbered subparagraphs permit compensation for (1) unreimbursed expenses, (2) death, (3) lost earnings, and (4) pain and suffering. Other paragraphs within section 15 limit potential damages. For example, § 15(d)(1) prohibits punitive or exemplary damages. Section 15(d)(2) restricts, with some exceptions, compensation to benefit the person who suffered the vaccine-related injury. Sections 15(g) and 15(h) make the Vaccine Program a secondary payer, except to Medicaid. "Thus, the Vaccine Act provides a generous compensation program, but with limits . . . to that generosity." <u>Griglock v. Sec'y of Health & Human Servs.</u>, 687 F.3d 1371, 1376 (Fed. Cir. 2012).

After Congress enacted the Vaccine Act, special masters in the early years of the Vaccine Program interpreted many aspects of section 15 to determine whether and how to compensate petitioners. Today, special masters and the parties continue to follow these early decisions. For example, to determine the reasonable amount of compensation for pain and suffering, special masters consider a three-factor test originally set out in <u>McAllister v. Sec'y of Health & Human Servs.</u>, No. 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), <u>vacated and remanded on other grounds</u>, 70 F.3d 1240 (Fed. Cir. 1995). <u>See</u> Pet'r's Br. at 8; Resp't's Br. at 4 (both citing <u>McAllister</u>). These factors are: (1) the ability to understand an injury, (2) the degree of the injury's severity, and (3) the anticipated duration of the injury.

One question requiring resolution was how to interpret § 15(a)(4). The Vaccine Act states "Compensation . . . shall include the following: . . . (4) For

2

actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000."

Special masters generally interpreted this provision as presenting a sliding scale on which people with the most severe pain and suffering received the highest amounts and people with less severe pain and suffering received relatively lower amounts. In other words, the damages for pain and suffering were placed on a continuum. See, e.g., Graves v. Sec'y of Health & Human Servs., No. 02-1211V, 2012 WL 1611578, at *2 (Fed. Cl. Spec. Mstr. Apr. 17, 2012), mot. for rev. granted, 100 Fed. Cl. 579 (2013).

However, in 2013, petitioners challenged this approach. Judge Merow at the Court of Federal claims held: "the statutory language speaks of a singular award not to exceed $250,000, not the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." Graves v. Sec'y of Health & Human Servs., 100 Fed. Cl. 579, 589-90 (2013). As Ms. Bossenbroek points out, the Secretary "did not file an appeal of Judge Merow's opinion or challenge it in any way." Pet'r's Br. at 9. Thus, "[a]ll vaccine cases assessing pain and suffering now employ the Graves analysis." Id. at 8.

Because the special master in Graves had erred in interpreting the statute, the judge made his own findings of fact. See 42 U.S.C. § 300aa–12(e)(2)(B). The Court cited approximately five cases in which judges at the Court of Federal Claims had determined pain and suffering in various contexts. Graves, 109 Fed. Cl. at 592-93. The Court also surveyed "other pain and suffering and emotional distress awards in other non-Vaccine Act cases" and cited nine of them. Id. at 595-96. Based upon this analysis, the Court found the child-vaccinee's emotional distress exceeded $250,000 and therefore awarded that amount. Id. at 596.

## II.   SIRVA and SPU

By 2014, hundreds of petitioners were claiming a vaccination injured their shoulder. The Secretary was often conceding that these petitioners were entitled to compensation, leading special masters to issue short rulings finding entitlement. See, e.g., Bowman v. Sec'y of Health & Human Servs., No. 13-807V, 2014 WL 3486773 (Fed. Cl. Spec. Mstr. June 17, 2014).

This surge in the number of cases led former Chief Special Master Vowell to create the special processing unit (SPU). SPU started July 1, 2014. At the

direction of the chief special master, staff attorneys oversee the parties' development of relatively simple cases, including those involving shoulder injuries.

Efficient processing of petitions alleging shoulder injuries became increasingly vital after the Secretary proposed to modify the Vaccine Table to recognize SIRVA. 80 Fed. Reg. 45132 (July 29, 2015). Since the table modification, SIRVA is the most commonly alleged injury, constituting roughly one-half of all petitions filed.

The chief special master designed SPU to process straightforward cases. For example, in numerous cases, the Secretary concedes that a petitioner meets the regulatory definition for SIRVA and the chief special master issues a ruling finding entitlement. This ruling finding entitlement to compensation does not end the case because the amount of compensation must be determined.

After a ruling finding entitlement, damages can be determined via three methods. First, the parties can discuss the various components and agree that the evidence supports an award of compensation in a particular amount, such as $100,000. When the parties agree, the Secretary submits a proffer and the special master issues a decision adopting the proffer. Second, after discussions, the parties find they disagree about what the evidence shows but find that a compromise is appropriate. For example, a petitioner could argue that a reasonable amount of compensation is $100,000, the Secretary could argue that a reasonable amount of compensation could be $50,000, and the parties would compromise at $75,000. In this situation the parties submit a stipulation. A stipulation is required because only the authorized representative of the Attorney General may compromise a claim involving the United States. 28 U.S.C. § 516. Third, the parties determine that they both disagree about the amount and are unable or unwilling to compromise. To continue the example from above, a petitioner might refuse to reduce her demand below $100,000 and/or the Secretary refuses to increase his offer above $50,000. In this situation the parties submit the case (or a specific issue) to a special master for resolution.

Cases in SPU have resolved via all methods. Most commonly, the parties proffer the case. The use of a proffer means the parties agree that a reasonable amount of compensation is a specific number.

Here, Ms. Bossenbroek and the Secretary dispute the persuasiveness of proffers in previous cases. The Secretary sees the relatively widespread use of

4

proffers as reflecting the accuracy of his views about the reasonable amount of compensation.  Cases that cannot be proffered, in the Secretary's view, cannot be proffered because a petitioner is overreaching.  Resp't's Br. at 8.

Needless to say, Ms. Bossenbroek disagrees.  She thinks that the government uses the delay that has become unfortunately endemic in the Vaccine Program to propose unreasonably small amounts.  Petitioners, according to Ms. Bossenbroek, face a difficult choice: either to accept wholesale the small amount that the government is offering or to reject the Secretary's meager offer prolonging the litigation with a hope the special master will award more compensation.  See Pet'r's Br. at 17; Pet'r's Reply at 12-13.  Unlike a petitioner who might be desperate for any compensation, Ms. Bossenbroek declined the Government's offer to proffer the case.

In theory, the parties' inability to agree to an amount of compensation would not preclude them by resolving the case through a stipulation.  To repeat, a stipulation represents a compromise.  Some SPU/SIRVA cases have resolved by stipulation.

However, stipulations are rare.  According to statistics that the Department of Justice presented at a recent judicial conference, in the year beginning October 1, 2018, in the 268 cases Secretary conceded were entitled to compensation, two cases resolved with a stipulation.  More recent statistics that the Department of Justice delivered to the Advisory Committee on Childhood Vaccines are consistent.  Of the 67 cases that the government conceded were entitled to compensation and that were adjudicated between November 16, 2019, and February 15, 2020, zero cases were resolved via a settlement.  See appendix 1.

The rarity of stipulations in SPU/SIRVA cases seems to be entirely (or nearly entirely) due to a policy from the government.  As the Deputy Director of the Torts/Constitutional and Specialized Torts Litigation Section in the Civil Division of the Department of Justice—essentially the day-to-day leader of the Vaccine Program litigation for the Department of Justice—explained at the recent Judicial Conference, the Government is willing to proffer a SIRVA case for the amount the Government believes is the case's full value provided the petitioner agrees.  The Government will not stipulate to an amount of pain and suffering above the amount the Government has determined is reasonable.  To refer to the earlier example, if the Government believes $50,000 is the amount of compensation for pain and suffering and the petitioner believes $100,000 is the

amount of compensation for pain and suffering, the government will not compromise at $75,000.[2]

For Ms. Bossenbroek's case, the parties have not resolved the amount of compensation through a proffer or a stipulation.  See Resp't's Br. at 4 (asserting that Ms. Bossenbroek rejected the Secretary's offer to proffer the case).  The remaining method is a resolution by a special master.  This evaluation begins with a review of the facts.

## III.   Events in Ms. Bossenbroek's Life and Procedural History

Ms. Bossenbroek was born in 1986.  Exhibit 24 at 160.  In 2009, she started attending law school and began working for a local attorney.  Exhibit 20 at 1; Tr. 72.[3]  In 2013, she was admitted to the bar for the State of Illinois.  Exhibit 20 at 17; exhibit 3 at 2.  She then got married.  She liked gardening and home repair.  Tr. 39, 86.

In August 2015, she gave birth to her first child.  Exhibit 2 at 25; exhibit 23 at 1.  For the first few weeks, Ms. Bossenbroek breast-fed her baby without any problems.  Exhibit 2 at 47; exhibit 9.  She also returned to her work as an attorney.  Exhibit 23 at 9.

Ms. Bossenbroek received the flu vaccine on October 22, 2015.  Because of an error in how the vaccine was administered, Ms. Bossenbroek received two doses of the vaccine.  Exhibit 1 at 1-3; exhibit 2 at 41-43; exhibit 7.  These vaccinations caused Ms. Bossenbroek's shoulder injury.

Ms. Bossenbroek informed her boss that she was having shoulder pain on November 2, 2015.  She told him that she had consulted "Dr. Google."  Exhibit 13.

The following day, November 3, 2015, Ms. Bossenbroek saw a doctor in the office of her primary care physician.  Ms. Bossenbroek said that she had been having pain since October 22, 2015, the day of the vaccination.  Exhibit 2 at 126-27.  The doctor's examination revealed minimal swelling.  Anterior rotation of the

---

[2] Whether this policy advances the interest of the United States is not for a special master to decide because Congress authorized the Attorney General and any delegatees to conduct litigation on behalf of the United States.

[3] "Tr." refers to the transcript from the December 13, 2018 hearing.

shoulder elicited pain.  The doctor ordered an ultrasound and referred Ms. Bossenbroek to an orthopedist.  Id. at 41-44.  The November 4, 2015 ultrasound was normal.  Id. at 125.  Around this time, Ms. Bossenbroek posted a picture to social media stating that her son naps only in her arms.  Exhibit 23 at 24.

Ms. Bossenbroek saw the orthopedist to whom she had been referred, Lawrence Lieber, on November 11, 2015.  She reported that she was having left shoulder pain that began with the vaccination.  Exhibit 2 at 31, 118.  Dr. Lieber noted tenderness in the shoulder area and pain at extremes of motion.  He referred her to physical therapy.  Exhibit 2 at 31-33.

The physical therapy sessions began on November 22, 2015.  Ms. Bossenbroek informed her physical therapist that her left shoulder had been "really sore" after her flu vaccination.  Ms. Bossenbroek also said she had had one episode of "numbness/tingling/weakness," which had resolved.  Ms. Bossenbroek stated she was having trouble sleeping and experiencing discomfort when using a computer during her job.  Ms. Bossenbroek rated her pain between 2/10 and 6/10. Exhibit 2 at 23-25.

In the first physical therapy session, the therapist conducted an examination finding tenderness in the anterior and lateral aspect of Ms. Bossenbroek's shoulder. Ms. Bossenbroek also had decreased range of motion and decreased strength.  Her Neer's and Hawkin's impingement tests were positive.  Id. at 24.  The therapist recommended additional therapy, one or two times per week for a duration of 10 weeks.  Id. at 25

In the second physical therapy session, Ms. Bossenbroek stated that she was not taking any medication for pain.  She also informed the therapist that she had researched the mechanism of her injury.  Exhibit 2 at 20.

In early December, Ms. Bossenbroek had four more physical therapy sessions, making the total number of physical therapy sessions six.  She was discharged from physical therapy on December 15, 2015, which is approximately two months after the vaccination.  Exhibit 2 at 3.

In the final physical therapy session in 2015, Ms. Bossenbroek reported that she was having "no pain at all" and rated her pain as 0/10.  She could also hold her child without feeling any pain.  The physical therapist rated the range of motion of her left shoulder as 175 degrees for flexion (increased from 160 degrees) and 180 degrees for abduction (increased from 170 degrees).  While the physical therapist

concluded that Ms. Bossenbroek had reached most of her goals, she did not have full strength in her mid traps.  The therapist discharged her with directions to maintain her home exercise program.  Exhibit 2 at 3-4; <u>see also</u> Tr. 18-20, 48, 53, 150.

By December 20, 2015, Ms. Bossenbroek was purchasing formula to feed her son.  Exhibit 10.  As discussed below, Ms. Bossenbroek attributes the use of formula to pain from her shoulder injury interfering with her ability to breast-feed.

Ms. Bossenbroek attested that the winter of 2015-16 was a very trying time for her.  She was a new mom who was getting very little sleep and she was in pain.  Exhibit 7 (affidavit) ¶ 6.  She was able to manage her pain by doing her exercises or yoga at home 3 to 4 times per week.  Exhibit 8 (statement).

Regardless of any pain, Ms. Bossenbroek continued with her life.  She traveled to Philadelphia to visit family.  Exhibit 24 at 92; Tr. 96-97.  In spring 2016, Ms. Bossenbroek and her husband decided to move from Illinois to Grand Rapids, Michigan, where they had both grown up.  Ms. Bossenbroek joined her family's company, which manages campgrounds.  Exhibit 8; exhibit 23 at 1; Tr. 77-78.

When Ms. Bossenbroek, her husband, and their friends were packing up the Illinois residence, Ms. Bossenbroek experienced pain in her shoulder.  Others carried the heavy boxes and painted rooms in their new home.  Tr. 23-25, 54.

For about nine months, Ms. Bossenbroek worked at two jobs.  She primarily worked for her family's business.  She also remotely oversaw the completion of a major project for the law firm in Illinois.  Tr. 99; <u>see also</u> exhibit 20 at 4 (weekly earnings from the Illinois law firm declined).

For her family's business, Ms. Bossenbroek was very busy.  Over the course of about six weeks from mid-May 2016 to end of June 2016, she traveled on four different trips to five states.  Exhibit 11 ¶ 17; Tr. 66-69.  She took one trip in August and another trip in September in that year as well.  Exhibit 11 ¶ 17; Tr. 31.

Ms. Bossenbroek accepted an offer for a free gym membership to attend yoga classes starting July 18, 2016.  She attended yoga about every other day for approximately two weeks.  When the trial membership expired, Ms. Bossenbroek declined to extend it because it cost too much.  Exhibit 14 at 2; Tr. 26, 42, 101-02.

Through all of 2016, Ms. Bossenbroek did not seek any medical attention. During the hearing, Ms. Bossenbroek testified that she simply did everything with pain. Tr. 103. For example, Ms. Bossenbroek attended a family vacation in Key West, Florida. Tr. 102-03; exhibit 24 at 46. Ms. Bossenbroek's husband explained that she did not have any medical appointments because she was really busy. Tr. 156. However, he recognized that she was sufficiently independent that she could have scheduled an appointment if she wished. Tr. 153.

For the first time in more than a year, Ms. Bossenbroek saw a doctor on January 4, 2017. The doctor was David Kaminski, an orthopedist. Ms. Bossenbroek told him that she had a "frozen shoulder" from a flu vaccination in 2015. Ms. Bossenbroek also reported that in the last week she experienced "dull and intermittent" symptoms. She rated her pain as "2/10 on average, 1/10 at best and 4/10 at worst." Exhibit 6 at 1. In her oral testimony, Ms. Bossenbroek described Dr. Kaminski as "dismissive" of her complaints. Tr. 106; see also Tr. 34, 59.

In Dr. Kaminski's examination, he found a full range of motion and mild weakness with infraspinatus testing and minimal discomfort with Spurling's maneuver and O'Brien testing. Ms. Bossenbroek had good strength in her deltoid. Dr. Kaminski diagnosed her with "chronic shoulder pain" and recommended simple home exercises with a band. Exhibit 6 at 2.

About one week later, Ms. Bossenbroek traveled to California for work. Exhibit 11 ¶ 17. Then, the following week, she was in Epcot for a vacation. Exhibit 23 at 74; Tr. 107.

Through her attorney, Ms. Bossenbroek filed her petition on January 27, 2017. She alleged that the October 22, 2015 flu vaccination injured her shoulder. Ms. Bossenbroek's case was assigned to SPU until the Secretary filed his report on October 26, 2017.

Ms. Bossenbroek did not seek medical attention for her shoulder in the remainder of 2017. She regularly participated in yoga from February 16, 2017, through June 8, 2017. Exhibit 14 at 2. Ms. Bossenbroek traveled some in 2017, but, overall, she took fewer trips than in 2016.

In May 2017, Ms. Bossenbroek became pregnant with her second child. Exhibit 11 ¶ 11.e; Tr. 34, 108. Ms. Bossenbroek's pregnancy seems not to have affected her shoulder but the pregnancy caused her to curtail her yoga practice.

9

When she was coming close to the end of her pregnancy, Ms. Bossenbroek told the midwife who was following her that she was concerned about her shoulder problem interfering with her ability to breast-feed just as it had with her first child. Accordingly, the midwife referred Ms. Bossenbroek to a physical therapist. Exhibit 18 ¶ 1; exhibit 12; Tr. 35, 60.

Ms. Bossenbroek gave birth to her second child in February 2018.  Because she was using her left shoulder more frequently, she experienced more pain. Exhibit 18 (affidavit) ¶ 2; exhibit 23 at 109.  In her six-week postpartum appointment with her obstetrician, Ms. Bossenbroek reported that she was breast-feeding and doing well.  She also requested a referral for physical therapy.  Exhibit 19.

This round of physical therapy began on March 23, 2018.  In the first session, Ms. Bossenbroek reported breast-feeding was painful.  Ms. Bossenbroek told the therapist that her "frozen shoulder [was] due to flu shot, wrong spot, in the bursa.  This was in 2015."  Exhibit 15 at 1-4.  Over the next few physical therapy sessions, Ms. Bossenbroek continued to report shoulder pain.  However, the physical therapy treated her for problems associated with giving birth.  Ms. Bossenbroek received little, if any, therapy on her shoulder.  See Exhibit 22; Tr. 36, 63, 110.

Ms. Bossenbroek was discharged from physical therapy on August 18, 2018. The therapist noted that she was doing well with the birth-related problems.  The therapist also recorded that Ms. Bossenbroek "at this time has primary complaint of L shoulder pain.  [She] is welcome back to Good Life Physical Therapy for L shoulder rehabilitation."  Exhibit 25 at 5; Tr. 63.

Ms. Bossenbroek's claim in the Vaccine Program progressed throughout 2018 with her periodically filing medical records and other documents.  She was also ordered to produce social media postings for the relevant time.  Order, 2018 WL 4790383 (Sept. 4, 2018).  After Ms. Bossenbroek filed the relevant documents, a hearing was held in Grand Rapids, Michigan, on December 13, 2018.

The primary purpose of the hearing was to determine whether Ms. Bossenbroek's shoulder injury lasted long enough to fulfill the six-month statutory requirement.  See 42 U.S.C. § 300aa–11(c)(1)(D)(i).  At the conclusion of the hearing, the undersigned preliminarily determined that Ms. Bossenbroek's shoulder injury lasted more than six months.  The undersigned memorialized this finding in a Tentative Findings of Fact, issued on January 3, 2019.  The

undersigned linked the finding of six months of injury to the mild amount of pain
Ms. Bossenbroek was experiencing:

> Although the medical records are somewhat ambiguous, the
> records are consistent with Ms. Bossenbroek experiencing low-
> level pain in her shoulder since vaccination.  Though ongoing,
> the pain does not appear to have significantly affected her
> lifestyle since December 2015 and indeed the undersigned's
> findings rely on the premise that the pain Ms. Bossenbroek
> continues to experience is, relatively, minor.  Accordingly, as
> noted in the bench ruling, Ms. Bossenbroek's damages are
> relatively modest.  The undersigned hopes that this guidance
> will help the parties resolve the case quickly and informally.

Tentative Findings of Fact at 3.

With the Tentative Findings of Fact, the parties attempted to resolve the case
informally.  However, they did not.  When the parties reached an impasse, the
undersigned issued a Ruling Finding Facts and Granting Entitlement.  2019 WL
2246726 (Apr. 16, 2019).  This Ruling advanced Ms. Bossenbroek's case into a
phase to determine the amount of compensation.

When the parties were attempting to resolve the amount of compensation,
Ms. Bossenbroek went to see another doctor, Matthew Axtman, on July 1, 2019.
Ms. Bossenbroek relayed her history of shoulder problems since the October 2015
flu vaccination and said that "eventually the physical therapy helped with her range
of motion as well as her pain, but she continued to have pain that lingered on into
the shoulder."  Exhibit 31 at 1.  Dr. Axtman examined Ms. Bossenbroek and found
tenderness and impingement, but a normal range of motion.  For both abduction
and flexion, the range of motion was 180 degrees.  Id. at 2-3.  Dr. Axtman
requested an MRI.  The July 20, 2019 MRI was "unremarkable."  Id. at 6.

Ms. Bossenbroek returned to Dr. Axtman on August 8, 2019.  She informed
him that she "has been able to perform all activities without restrictions, but she
will have an underlying nagging pain into the shoulder."  She said that "the
majority of her pain [is] if she is doing overhead activity."  Exhibit 31 at 5.  After
Dr. Axtman examined her and reviewed the MRI, he concluded "the majority of
pain is stemming from an impingement syndrome of the shoulder on the
supraspinatus tendon.  [He] discussed that there is nothing structurally … that is
damaging so she may continue with activities as tolerated."  Id.  Ms. Bossenbroek

declined a steroid injection because "she is not significantly limited." Dr. Axtman encouraged her to maintain her home exercise program. Id.

During Ms. Bossenbroek's treatment with Dr. Axtman, efforts to conclude her pending case continued. To resolve the parties' stalemate with respect to an appropriate amount of compensation for Ms. Bossenbroek's pain and suffering, the undersigned proposed a method of resolution colloquially known as "baseball arbitration." In this process, each party would submit one proposal, and the undersigned would accept either one proposal or the other proposal. This structure might encourage the parties to moderate their demands and offers. Order, issued July 5, 2019.

Ms. Bossenbroek supported this proposal. Pet'r's Mem., filed July 16, 2019. However, the Secretary did not. Resp't's Mem., filed July 26, 2019. After reviewing the submissions, the undersigned declined to use baseball arbitration and set a schedule for filing briefs. Order, issued Dec. 20, 2019. Citing Graves, this order requested that the parties provide information about (i) decisions from outside the Vaccine Program about compensation for pain and suffering for shoulder injuries, (ii) reasoned decisions from special masters about compensation for pain and suffering for shoulder injuries, and (iii) any statistical information based upon proffers and stipulations.

Both parties filed initial briefs on February 7, 2020.[4] The Secretary provided an appendix, listing cases from outside the Vaccine Program about pain and suffering; Ms. Bossenbroek did not. Each party filed a reply brief on February 24, 2020. Thus, the case is ready for adjudication.

## IV.   Analysis

The parties dispute three items of compensation. The most significant area of dispute is the reasonable amount of compensation for past pain and suffering. This item is resolved in section A below. The two other areas, the compensation for future emotional distress and unreimbursed expenses, are evaluated in section B and C, respectively.

---

[4] Ms. Bossenbroek filed a corrected brief on February 21, 2020, and this decision refers to the corrected brief.

### A.    Past Pain and Suffering

Ms. Bossenbroek argues that the undersigned "should make an independent judgment of pain and suffering after reviewing the record as a whole and applying the Graves/McAllister factors." Pet'r's Br. at 18. "Independence," in this context according to Ms. Bossenbroek, means not considering proffers or stipulations and not considering cases from outside the Vaccine Program. Id. at 14-18. To Ms. Bossenbroek, those adjudications are "not relevant."

Ms. Bossenbroek is mistaken. The primary example contradicting Ms. Bossenbroek's assertion is Graves, a case that Ms. Bossenbroek states "has become the law of the Program." Id. at 8. In determining a reasonable amount of pain and suffering for a child-vaccinee who died approximately 40 days after vaccination, the judge looked to non-Vaccine Act cases in which estates were awarded compensation for their decedent's pain and suffering between a negligent act and the unfortunate death. Graves, 109 Fed. Cl. at 595-96.

Rather than look to this aspect of Graves, Ms. Bossenbroek extracts a different sentence. Ms. Bossenbroek quotes Graves as stating "it was clear that Congress intended to be more generous than the civil court system." Pet'r's Br. at 9. While Ms. Bossenbroek accurately copies the words from the Graves opinion, Graves, on this point, is not correct. Graves is quoting from the dissenting opinion in the en banc Federal Circuit opinion, Cloer v. Sec'y of Health & Human Servs., 654 F.3d 1322, 1350 (Fed. Cir. 2011) (en banc).[5] As part of a dissenting opinion, this statement carries no legal force. Prometheus Laboratory Inc. v. Mayo Collaborative Services, 628 F.3d 1347, 1356 n.2 (Fed. Cir. 2017), rev'd on other grounds, 566 U.S. 66, 70 (2012). Moreover, the Vaccine Act seems to contradict the dissenting judges' assertion. As noted above, the Vaccine Act limits recovery in several ways compared to the civil court system, such as forbidding punitive damages, restricting compensation only to the person who receives the vaccine, and, most importantly for this case, capping pain and suffering at $250,000.

Consequently, in determining a reasonable amount of compensation for Ms. Bossenbroek's pain and suffering, the undersigned chooses to consider prior cases that have awarded pain and suffering to people suffering shoulder injuries. See

---

[5] To be fair to Ms. Bossenbroek, Graves did not note that its quotation came from a dissenting opinion.

Doe 34 v. Sec'y of Health & Human Servs., 87 Fed. Cl. 758, 767-68 (2009); Ultimo v. Sec'y of Health & Human Servs., 28 Fed. Cl. 148, 152-53 (1993). However, this choice does not resolve the issue entirely because a secondary question is whether to consider cases inside or outside the Vaccine Program.

The short answer is to consider both. But the analysis begins with cases outside the Vaccine Program. The assessment starts here for two reasons. First, Ms. Bossenbroek fiercely argues that compensation awarded in Vaccine Program cases from SPU is "substantially low," Pet'r's Br. at 16, or "artificially low." Pet'r's Reply at 11. In Ms. Bossenbroek's initial brief, she states Chief Special Master Dorsey failed to account for a "Congressional mandate to compensate generously." However, for reasons explained above in connection with Graves, Ms. Bossenbroek—not the chief special master—misunderstands the Vaccine Act. While Ms. Bossenbroek essentially repeats her respectful disagreement with the former chief special master in her reply brief, Ms. Bossenbroek adds a different reason.

Ms. Bossenbroek argues that the series of cases from former Chief Special Master Dorsey are built upon a flawed foundation.

> Those early cases, which served as building blocks for the remainder of [former Chief] Special Master Dorsey's decisions … were based on faulty data, including litigative risk settlements in other SPU-SIRVA cases. With all due respect to [former Chief] Special Master Dorsey, she failed to make any distinction whatsoever between "settled" cases from one firm (all three early cases were from the same firm) and cases that were conceded (full value cases not settled on the basis of litigative risk). She also failed to look at settlements and proffers from other law firms, which in many cases were much, much higher. This is why the cases decided by [former Chief] Special Master Dorsey are artificially low.

Pet'r's Reply at 11.

There may be a grain of truth here.[6]  However, awards given in the Vaccine Program, including SPU, are still informative.

One reason for looking at cases outside the Vaccine Program is that the finder-of-fact is almost always a jury.  The Supreme Court has endorsed a jury's wisdom.  Juries are presumed to find facts competently and thoroughly.  Francis v. Franklin, 471 U.S. 307, 324 n. 9 (1985).  The jury's role is particularly important in negligence cases.  TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 450 (1976).

The collectivity of juries stands in contrast to the Vaccine Program in which a single special master decides compensation for pain and suffering.  The process for determining pain and suffering is perhaps the most subjective decision a special master makes.  To be sure, special masters are qualified to make this difficult decision.  See Whitecotton v. Sec'y of Health & Human Servs., 81 F.3d 1099, 1104 (Fed. Cir. 1996).  And, yet, when special masters could receive assistance, why decline the help?

The survey of cases the Secretary presents contains useful information.[7]  As noted above, in most cases, jurors assessed pain and suffering.  In addition, the number of cases (more than 50) is fair.  While it is true that no two cases are exactly alike, the number of cases tends to even out some differences.[8]  In this survey, the mean award is $31,105.89, the median award is $13,000.00, and the center of the interquartile range is $22,500.00.  This information from the survey tends to show that the former chief special master's awards are more generous than

---

[6] Ms. Bossenbroek fails to acknowledge that the former Chief Special Master considered all the information that was available to her and then used that information as a background for deciding each case individually.  Thus, Ms. Bossenbroek's criticism is worth, perhaps, a peppercorn.

[7] While Ms. Bossenbroek was encouraged to cite cases involving shoulder injuries from outside the Vaccine Program, order issued Dec. 20, 2019, Ms. Bossenbroek declined.  She stated those cases are "entirely irrelevant." Pet'r's Reply at 7.
    As explained in the text, cases from outside the Vaccine Program are relevant.  Thus, the survey of cases from the Secretary is reproduced as appendix 2 to this decision.

[8] Strangely, but accurately, Ms. Bossenbroek points out "almost none of the cases involve plaintiffs who have experienced shoulder injuries limited to the shoulder alone." Pet'r's Reply at 7.  The inclusion of additional injuries suggests that the chart overvalues the pain and suffering derived from only a shoulder injury.

those awards made by juries in state-court litigation.  See Nute v. Sec'y of Health
& Human Servs., No. 18-140V, 2019 WL 6125008, *8 (Fed. Cl. Spec. Mstr. Sept.
6, 2019) (presenting statistical information).

Within the realm of rulings and decisions from former Chief Special Master
Dorsey, one roughly analogous case is Knauss v. Sec'y of Health & Human Servs.,
No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018).  There,
Mr. Knauss suffered pain and restricted movement in his shoulder for
approximately five months.  He went to physical therapy 23 times and reported
that he was 94% improved and his pain level was 1.5/10.  After considering these
factors, the former chief special master awarded $60,000 in compensation for pain
and suffering.  2018 WL 3432906, at *8.

Collectively, these cases provide a framework for evaluating the individual
circumstances of Ms. Bossenbroek's case.  The undersigned has reviewed all the
evidence, documentary and testimonial.  The following points are especially
valuable.

- Ms. Bossenbroek was a new mom who was breast-feeding her child.
  Exhibit 2 at 47.  Approximately one month after vaccination Ms.
  Bossenbroek told a physical therapist that she was having difficulty
  holding her son.  Exhibit 2 at 23.  The pain was interfering with her
  ability to breast-feed.  Exhibit 7 (affidavit) ¶ 4.
- Within two weeks of the vaccination, Ms. Bossenbroek told her
  supervisor that she was having severe shoulder pain.  She emailed,
  saying she had consulted "Dr. Google."  Exhibit 13.
- The ultrasound on November 4, 2015, was normal.  Exhibit 2 at 125.
- In Ms. Bossenbroek's second physical therapy visit, which was on
  November 24, 2015, she stated that she was not taking any pain
  medications.  Exhibit 2 at 20.
- In Ms. Bossenbroek's final physical therapy visit, which was on
  December 15, 2015, she reported "no pain at all."  Exhibit 2 at 3.

This evidence suggests that the worst phase of Ms. Bossenbroek's pain and
suffering was between the date of the vaccination (October 22, 2015) and the
discharge from physical therapy (December 15, 2015).  Essentially, the worst of
her pain lasted two months.

However, as the April 16, 2019 Ruling Finding Facts and Granting Entitlement found, Ms. Bossenbroek was not completely recovered when she was discharged.  She continued to exercise at home with stretching bands and to do yoga 3-4 times per week.  Exhibit 8.

During all 2016, Ms. Bossenbroek did not seek any medical treatment.  The lack of treatment suggests, but does not establish absolutely, Ms. Bossenbroek's pain was minimal.  If Ms. Bossenbroek were experiencing significant pain, she probably would have sought relief from a medical professional.  During 2016, any shoulder pain did not prevent her from engaging in activities.  She traveled for pleasure.  Exhibit 24 at 92 (January trip to Philadelphia), at 46 (October trip to Key West).  She worked as an attorney at two jobs, which overlapped for more than six months.  She traveled on six trips for work.  She sold a house and moved.  Even if Ms. Bossenbroek required assistance with luggage (Tr. 30, 45) and could not carry heavy moving boxes (Tr. 23-24), these inconveniences were relatively minor.  Moreover, while Ms. Bossenbroek said yoga classes helped, her participation at a yoga studio ended when her free trial membership was not renewed due to expense.  See exhibit 14; Tr. 101.

This list of activities shows Ms. Bossenbroek was busy.  She attempts to explain that her busyness explains why she could not seek medical attention.  See Pet'r's Reply at 2-3.  Ms. Bossenbroek did sometimes place her children's needs ahead of her own.  See Tr. 189.  However, at some point, this argument must yield.  It is reasonable to believe that a person facing moderate pain on a nearly continuous basis would seek treatment at some point.  If Ms. Bossenbroek were motivated, she could have found the time to see a doctor.  See Tr. 153.

When Ms. Bossenbroek finally saw a doctor again, she told the orthopedist her pain was 2/10.  Exhibit 6 at 1.  This visit was on January 4, 2017, approximately three weeks before the petition was filed.

The remainder of 2017 resembled 2016, with one exception.  Similarities include: Ms. Bossenbroek traveled for work and pleasure, Ms. Bossenbroek participated in yoga, and Ms. Bossenbroek did her home exercises approximately three days per week for approximately 20 minutes each time.  The only exception was that in 2017, Ms. Bossenbroek became pregnant.  Tr. 34.

The birth of Ms. Bossenbroek's second child prompted Ms. Bossenbroek's midwife to refer her to physical therapy for her frozen shoulder.  Exhibit 12; exhibit 18 ¶ 1; Tr. 36, 60.  In 2018, Ms. Bossenbroek had physical therapy, but the

emphasis was on the pelvic pain from delivering a baby, not shoulder pain.  Tr.
110; exhibit 15 at 1-4; exhibit 22 at 45; <u>see also</u> Resp't's Reply at 4.  While at
discharge on August 13, 2018, Ms. Bossenbroek was invited to continue
rehabilitating her shoulder, she did not.  Exhibit 25 at 5.

At the end of 2018, Ms. Bossenbroek, her husband, her sister, her father, and
a friend testified at a hearing.  Although they focused on whether Ms. Bossenbroek
suffered an injury for more than six months, the witnesses testified about her
current pain as well.

After the hearing, there was again about a six-month gap in which Ms.
Bossenbroek did not seek medical attention.  Complaining about shoulder pain
from her October 2015 flu vaccination, Ms. Bossenbroek sought treatment from an
orthopedist in July 2019.  The orthopedist found tenderness but a normal range of
motion.  He recommended an MRI.  Exhibit 31 at 1-4.  The MRI was
unremarkable.  <u>Id.</u> at 6.  In follow-up, the orthopedist recognized her pain, but Ms.
Bossenbroek declined a steroid injection, which could bring some relief.  Exhibit
31 at 6.

This evidence suggests that $50,000 is a reasonable amount of compensation
for Ms. Bossenbroek's past pain and suffering.

### B.      Future Pain and Suffering

In addition to compensating for past pain and suffering, a special master may
compensate for future pain and suffering.  Section 15(a)(4).  Awards for future
pain and suffering must be discounted to net present value.  Section 15(f)(4)(A);
<u>Youngblood v. Sec'y of Health & Human Servs.</u>, 32 F.3d 552 (Fed. Cir. 1994).

Ms. Bossenbroek is currently 34 years old.  Citing a life expectancy
calculator from the Social Security Administration, Ms. Bossenbroek states her life
expectancy is an additional 52.2 years.  Pet'r's Br. at 9 (stating Ms. Bossenbroek is
expected to live to 85.5 years).  Without citing any evidence for life expectancy,
the Secretary's proposal for future pain and suffering stops after 48 years when
Ms. Bossenbroek is age 82.  Resp't's Br., appendix A.

Besides the slight difference in life expectancy, the parties offer different
proposals for the other components of an award for future pain and suffering—the
amount per year and the net discount rate.

|  | Ms. Bossenbroek | Secretary |
|---|---|---|
| Amount per Year | $1,200 | $300 |
| Net Discount Rate | 1% | 2% |

Ms. Bossenbroek's ongoing pain is mild.  In her most recent medical report, Dr. Axtman stated that Ms. Bossenbroek declined a steroid injection because "she is not significantly limited."  Exhibit 31 at 6.  Therefore, a reasonable amount of compensation is $300 per year, as the Secretary proposed.

However, for the net discount rate, the evidence aligns with Ms. Bossenbroek's position.  Both parties were given an opportunity to present evidence regarding the net discount rate.  Order, issued Dec. 20, 2019.  Ms. Bossenbroek presented a report from Robert Cook, a professor of economics.  Dr. Cook opined that a net discount rate is 1%.  Exhibit 32 at 5.  The Secretary declined the opportunity to present evidence.  Resp't's Br. at 10.  Thus, Ms. Bossenbroek's evidence is stronger than the Secretary's (non-existent) evidence.

A reasonable amount of compensation for Ms. Bossenbroek's future pain and suffering is $11,692.19.

## C.      Unreimbursed Expenses

Finally, the parties dispute Ms. Bossenbroek's out-of-pocket costs.  Ms. Bossenbroek requests $1,209.30.  Exhibit 30.  The Secretary agrees with $734.68, disputing $474.62.  The amount in dispute represents the cost of baby formula Ms. Bossenbroek bought due to trouble breast-feeding.  This cost is reasonable.

## V.      <u>Conclusion</u>

The October 22, 2015 flu vaccination injured Ms. Bossenbroek's left shoulder.  A reasonable amount of compensation for this unfortunate injury is $62,901.49.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[9]

**IT IS SO ORDERED.**

s/Christian J. Moran
Christian J. Moran
Special Master

---

[9] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

<u>Appendix 1:</u>

Statistical Information regarding Method of Resolution

Source:  Department of Justice Presentations[1]

---

[1] Information from the Office of Special Masters is either identical or nearly identical.



**U.S. Court of Federal Claims**
**Judicial Conference**
**November 14, 2019**

**Catharine E. Reeves**
*Deputy Director, Torts Branch*
*U.S. Department of Justice*

42

# Statistics
## Reporting Period: 10/1/18 – 9/30/19

**II. Total Petitions Adjudicated this reporting period:  791**
  A.  Compensated:
    i. Cases conceded by HHS:  268
      1.  Decision awarding damages:  13
      2.  Decision adopting Proffer: 253
      3.  Decision adopting Settlement: 2
    ii. Cases not conceded by HHS:  361
      1.  Decision awarding damages: 10
      2.  Decision adopting Proffer:  0
      3.  Decision adopting Settlement: 351
  B.  Not Compensated/Dismissed: 162
    i.  Decision dismissing Non-OAP: 159
    ii.  Decision dismissing OAP: 3



# Report from the Department of Justice

## March 6, 2020

Catharine E. Reeves
*Deputy Director, Torts Branch*

# Statistics
## Reporting Period: 11/16/19 – 2/15/20

**Total Petitions Adjudicated this Reporting Period: 181**

  A. Compensated: 146

      i. Cases conceded by HHS: 67

          1. Decision awarding damages: 2

          2. Decision adopting Proffer: 65

          3. Decision adopting Settlement: 0

      ii. Cases not conceded by HHS: 79

          1. Decision awarding damages: 0

          2. Decision adopting Proffer: 5

          3. Decision adopting Settlement: 74

  B. Not Compensated/Dismissed: 35

Appendix 2:

Survey of Cases Awarding Compensation for Shoulder Injury

Source:  Department of Justice[1]

---

[1] "[R]espondent searched for 'shoulder impingement' and 'shoulder bursitis' in the Jury Verdicts and Settlements database on Westlaw. Respondent limited the search results to cases from the last five years, and identified pain and suffering awards in which the shoulder was the main (or one of the main) injuries, and there were no extreme fact patterns or findings of comparative/contributory fault."  Resp't's Br. at 6.

| # | Name, Cite | Date | State | Age of Plaintiff | Type of accident | Finder of Fact |
|---|---|---|---|---|---|---|
| 1 | Todd-Krasen v. Barrios, 2016 WL 4258300 (Wash. Super.) | 6/28/16 | WA | 58 | car accident | jury |
| 2 | Jones v. Ray-Trigg, 2017 WL 1735346 (Tex. Dist.) | 3/8/17 | TX | adult | car accident | jury |
| 3 | *SAME as #1 | | | | | |
| 4.1 | Millard v. Taylor, 2016 WL 9023669 (Ohio Com. Pl.) *Henry Millard | 10/24/16 | OH | adult | car accident | jury |
| 4.2 | Millard v. Taylor, 2016 WL 9023669 (Ohio Com. Pl.) *Malinda Millard | 10/24/16 | OH | 57 | car accident | jury |
| 5 | Althouse, Jr. v. Ebert, 2018 WL 3726943 (Pa. Com. Pl.) *Michael Althouse | 3/26/18 | PA | adult | car accident | arbitration |

| # | Name, Cite | Claimed Nature of injury | Surgery | Pain & Suffering Award | Notes |
|---|---|---|---|---|---|
| 1 | Todd-Krasen v. Barrios, 2016 WL 4258300 (Wash. Super.) | facet separation of the cervical spine; cervical and lumbar spinal stenosis; rotator cuff weakness, subscapularis and biceps tendinopathy with partial thickness tearing, medial subluxation of the biceps tendon and shoulder impingement which required surgery; and hand and wrist injuries which led to numbness in the right hand and post-traumatic arthritis of the right wrist which required surgery, and headaches | yes | $1,000 | |
| 2 | Jones v. Ray-Trigg, 2017 WL 1735346 (Tex. Dist.) | cervical radiculitis, thoracic and lumbar strains and shoulder impingement, | no | $1,000 | |
| 3 | *SAME as #1 | | | | |
| 4.1 | Millard v. Taylor, 2016 WL 9023669 (Ohio  Com. Pl.) *Henry Millard | cervical and thoracic strains | no | $500 | |
| 4.2 | Millard v. Taylor, 2016 WL 9023669 (Ohio  Com. Pl.) *Malinda Millard | type II glenoid labral tear, rotator cuff tear and bursitis of left shoulder which required surgery and resulted in permanent impairment, as well as cervical, thoracic and lumbar strains. | yes | $1,500 | |
| 5 | Althouse, Jr. v. Ebert, 2018 WL 3726943 (Pa. Com. Pl.) *Michael Althouse | C6 radiculopathy resulting in paresthesias of the left arm | no | $10,000 | |

| # | Name, Cite | Date | State | Age of Plaintiff | Type of accident | Finder of Fact |
|---|---|---|---|---|---|---|
| 6 | <u>Althouse, Jr. v. Ebert</u>, 2018 WL 3726943 (Pa. Com. Pl.) *Megan Althouse | 3/26/18 | PA | adult | car accident | arbitration |
| 7 | <u>Canales v. Meiners</u>, 2016 WL 3012067 (Tex .Dist.) | 3/2/16 | TX | adult | car accident | jury |
| 8.1 | <u>Crawford v. Cho</u>, 2017 WL 6373610 (Pa. Com. Pl.) *Flynnell Crawford | 8/7/17 | PA | adult | car accident | arbitration |
| 8.2 | <u>Crawford v. Cho</u>, 2017 WL 6373610 (Pa. Com. Pl.) *Ann Fox | 8/7/17 | PA | adult | car accident | arbitration |
| 9 | <u>Lowery v. State Farm</u>, 2016 WL 6083855 (Md. Cir. Ct.) | 6/14/16 | MD | adult | car accident | jury |

| # | Name, Cite | Claimed Nature of injury | Surgery | Pain & Suffering Award | Notes |
|---|---|---|---|---|---|
| 6 | <u>Althouse, Jr. v. Ebert</u>, 2018 WL 3726943 (Pa. Com. Pl.) *Megan Althouse | multiple level back strains and shoulder impingement | no | $3,000 | |
| 7 | <u>Canales v. Meiners</u>, 2016 WL 3012067 (Tex .Dist.) | cervical disc protrusion, acquired loss of cervical lordosis, concussion leading to post concussion syndrome, shoulder AC joint separation with impingement, and cervical, thoracic and lumbar strains | no | $3,000 | |
| 8.1 | <u>Crawford v. Cho</u>, 2017 WL 6373610 (Pa. Com. Pl.) *Flynnell Crawford | cephalgia, cervical, thoracic and lumbar strains, right-sided traumatic myofascitis, right shoulder strain and contusions and bilateral knee sprains and contusions | no | $224 | |
| 8.2 | <u>Crawford v. Cho</u>, 2017 WL 6373610 (Pa. Com. Pl.) *Ann Fox | torn supraspinatus tendons with strain, impingement of the acromioclavicular joint, subacromial bursitis and joint effusion, as well as cervical, thoracic and lumbar strains. | no | $3,500 | |
| 9 | <u>Lowery v. State Farm</u>, 2016 WL 6083855 (Md. Cir. Ct.) | left shoulder injuries including sprain with impingement syndrome and subacromial tendinitis that required two surgeries including an arthroscopic left shoulder rotator cuff debridement and subacromial decompression, as well as post-traumatic headaches, soft tissue injuries to her neck and back a chest contusion and mental anguish | yes | $4,000 | **\*judge reduced award to $0 because of pre-trial payments already made to P** |

| # | Name, Cite | Date | State | Age of Plaintiff | Type of accident | Finder of Fact |
|---|---|---|---|---|---|---|
| 10 | Spolar v. Schulz, 2016 WL 8740261 (Pa. Com. Pl.) | 11/9/16 | PA | adult | car accident | arbitration |
| 11 | Tripp v. Dacosta, 2019 WL 5197125 (Mass. Super.) | 8/6/19 | MA | adult | car accident | jury |
| 12 | Wilburn v. Leddy, 2019 WL 5555589 (Pa. Com. Pl.) | 8/1/19 | PA | 28 | car accident | jury |
| 13 | Dhingra v. Lemien, 2019 WL 2551625 (Conn. Super.) | 4/4/19 | CT | adult | car accident | jury |
| 14 | Tucker-Lloyd v. Holiday, 2019 WL _____ (Pa. Com. Pl.) (JVR no. 170301744) | 2/8/19 | PA | adult | car accident | jury |
| 15 | Stokes v. Watkins, 2016 WL 7118685 (Pa. Com. Pl.) | 9/1/16 | PA | adult | car accident | arbitration |

| # | Name, Cite | Claimed Nature of injury | Surgery | Pain & Suffering Award | Notes |
|---|---|---|---|---|---|
| 10 | Spolar v. Schulz, 2016 WL 8740261 (Pa. Com. Pl.) | proximal humerus fracture, left shoulder impingement and cervical disc herniations at C4-C7 | no | $4,000 | |
| 11 | Tripp v. Dacosta, 2019 WL 5197125 (Mass. Super.) | right shoulder impingement with fraying of the anterior superior labrum and AC joint arthrosis with signal change about her rotator cuff, which required arthroscopic surgery, headaches, and unspecified injuries to her neck, back and right hip | yes | $5,000 | |
| 12 | Wilburn v. Leddy, 2019 WL 5555589 (Pa. Com. Pl.) | left shoulder impingement syndrome, aggravation of cervical and lumbar spondylosis with disc bulging, and cervical, lumbar and left wrist strains | no | $6,000 | |
| 13 | Dhingra v. Lemien, 2019 WL 2551625 (Conn. Super.) | post-concussion syndrome with headaches and concentration issues, right shoulder impingement, left knee contusion and injuries to her neck, hip and lower back | no | $7,500 | |
| 14 | Tucker-Lloyd v. Holiday, 2019 WL _____ (Pa. Com. Pl.) (JVR no. 170301744) | shoulder tendinopathy, shoulder bursitis, neck sprain | no | $7,500 | |
| 15 | Stokes v. Watkins, 2016 WL 7118685 (Pa. Com. Pl.) | post traumatic chronic headaches, shoulder bursitis and neck and back sprains | no | $7,500 | |

| # | Name, Cite | Date | State | Age of Plaintiff | Type of accident | Finder of Fact |
|---|---|---|---|---|---|---|
| 16 | <u>Pham v. Gadelov</u>, 2016 WL 4537028 (N.J. Super. L.) | 7/15/16 | NJ | adult | car accident | jury |
| 17 | <u>Scherzberg v. Reed</u>, 2017 WL 6944527 (Minn. Dist. Ct.) | 10/6/17 | MN | 45 | car accident | jury |
| 18 | <u>Mier v. Sandoval</u>, 2016 WL 5845816 (Colo. Dist. Ct.) | 1/15/16 | CO | adult | car accident | jury |
| 19 | <u>Ramirez v. Driscoll</u>, 2017 WL 7693776 (Conn. Super.) | 11/22/17 | CT | adult | car accident | jury |
| 20 | <u>Megie v. Kelb</u>, 2015 WL 12746400 (Conn. Super.) | 11/5/15 | CT | adult | car accident | jury |
| 21.1 | <u>Gehrt v. Nolen</u>, 2017 WL 5989959 (Tenn. Cir. Ct.) *Brian Gehrt | 1/26/17 | TN | 48 | car accident | jury |

| # | Name, Cite | Claimed Nature of injury | Surgery | Pain & Suffering Award | Notes |
|---|---|---|---|---|---|
| 16 | Pham v. Gadelov, 2016 WL 4537028 (N.J. Super. L.) | C5-C6 disc herniation with radiculopathy, C3-C4 and C4-C5 disc bulges, carpal tunnel syndrome, temporomandibular joint disorder and left shoulder tendonitis and bursitis which was treated with arthroscopic surgery | yes | $7,500 | |
| 17 | Scherzberg v. Reed, 2017 WL 6944527 (Minn. Dist. Ct.) | shoulder impingement syndrome, right arm radicular pain, cervical spondylosis, SI joint dysfunction, trochanteric bursitis, a concussion leading to post-concussion symptoms | no | $8,000 | |
| 18 | Mier v. Sandoval, 2016 WL 5845816 (Colo. Dist. Ct.) | shoulder sprain; cervical, thoracic, and lumbar strains; a sacroiliac strain; post-traumatic headaches; right shoulder impingement; facet syndrome of the upper cervical facets; disc herniations at T6-T7; somatic dysfunction; myofascial pain; and emotional distress | no | $8,000 | |
| 19 | Ramirez v. Driscoll, 2017 WL 7693776 (Conn. Super.) | cervical disc protrusion with radicular syndrome, headaches, left shoulder bursitis, cervical, thoracic, lumbar and shoulder strains, and contusions to her face, head and chest | no | $8,791 | |
| 20 | Megie v. Kelb, 2015 WL 12746400 (Conn. Super.) | left shoulder injuries including rotator cuff tendinitis, impingement and strain | no | $8,910 | |
| 21.1 | Gehrt v. Nolen, 2017 WL 5989959 (Tenn. Cir. Ct.) *Brian Gehrt | fractured tooth that required removal, bilateral carpal tunnel syndrome that required surgery, a dislocated left index finger, aggravation of a prior brain injury, and emotional distress | yes | $3,366 | |

| # | Name, Cite | Date | State | Age of Plaintiff | Type of accident | Finder of Fact |
|---|---|---|---|---|---|---|
| 21.2 | <u>Gehrt v. Nolen</u>, 2017 WL 5989959 (Tenn. Cir. Ct.) *Brandon Gehrt | 1/26/17 | TN | 48 | car accident | jury |
| 22 | <u>Brussler v. Borges</u>, 2016 WL 8711312 (N.J. Super. L.) | 12/12/16 | NJ | 43 | car accident | jury |
| 23 | <u>Theis v. Altom</u>, 2016 WL 8653389 (Cal. Super.) | 7/19/16 | CA | 52 | car accident | jury |
| 24 | <u>Lafavor v. Nurre</u>, 2017 WL 10219661 (Or. Cir.) | 9/28/17 | OR | adult | car accident | jury |

| # | Name, Cite | Claimed Nature of injury | Surgery | Pain & Suffering Award | Notes |
|---|---|---|---|---|---|
| 21.2 | Gehrt v. Nolen, 2017 WL 5989959 (Tenn. Cir. Ct.) *Brandon Gehrt | cerebral concussion with loss of consciousness, traumatic tendinitis of his left shoulder with impingement syndrome, an acute cervical strain with radiculopathy and disc syndrome, left wrist traumatic carpal tunnel syndrome, left subscapular bursitis with traumatic scapulocostal syndrome, and emotional distress | no | $9,031 | |
| 22 | Brussler v. Borges, 2016 WL 8711312 (N.J. Super. L.) | herniated disc at C5-C6 with neural impingement, foraminal narrowing and radiculopathy, as well as left shoulder impingement syndrome with tendinopathy which required cortisone injections and for which surgery was recommended | no | $10,000 | |
| 23 | Theis v. Altom, 2016 WL 8653389 (Cal. Super.) | lumbar radiculitis affecting his back and right leg with vertebral bone spurs at L1-L4 and spinal stenosis, as well as left shoulder impingement syndrome and a complete rotator cuff tear to his left shoulder which required epidural injections and surgery | yes | $10,000 | |
| 24 | Lafavor v. Nurre, 2017 WL 10219661 (Or. Cir.) | left shoulder impingement syndrome and permanent swelling of her left breast | no | $10,000 | |

| # | Name, Cite | Date | State | Age of Plaintiff | Type of accident | Finder of Fact |
|---|---|---|---|---|---|---|
| 25 | Delizo v. Dang, 2015 WL 10521777 (Wash. Super.) | 12/1/15 | WA | 53 | car accident | jury |
| 26 | Pineda v. Wal-Mart Stores, Inc., 2017 WL 4767043 (Fla. Cir. Ct.) | 7/20/17 | FL | 56 | slip and fall | jury |
| 27 | Lewis v. American Family Ins. Co., 2018 WL 2431395 (Minn. Dist. Ct.) | 4/5/18 | MN | 31 | car accident | jury |
| 28 | Feist v. Taylor, 2017 WL 7689190 (Mont .Dist.) | 9/28/17 | MT | adult | car accident | jury |
| 29 | Lopez v. Li, 2016 WL 8445683 (N.Y. Sup.) | 12/12/16 | NY | adult | car accident | jury |

| # | Name, Cite | Claimed Nature of injury | Surgery | Pain & Suffering Award | Notes |
|---|---|---|---|---|---|
| 25 | Delizo v. Dang, 2015 WL 10521777 (Wash. Super.) | SLAP tear, tendonitis and rotator cuff injury to his left shoulder with impingement which required arthroscopic surgery, for which he was assigned an 18% permanent impairment rating, as well as cervical, thoracic and lumbar strains and aggravation of preexisting degenerative disc disease, for which he was assigned a 6% permanent impairment rating | yes | $10,000 | |
| 26 | Pineda v. Wal-Mart Stores, Inc., 2017 WL 4767043 (Fla. Cir. Ct.) | suffered rotator cuff and tendon damage, labral tearing and bursitis and inflammation of the left shoulder with permanent loss of range of motion, and cartilage and ligament damage to her right knee; surgery for both knee and shoulder | yes | $12,500 | |
| 27 | Lewis v. American Family Ins. Co., 2018 WL 2431395 (Minn. Dist. Ct.) | right shoulder impingement, a right shoulder rotator cuff tear that required surgery, right upper extremity cervical radiculitis, a right knee bone contusion with cartilage defect at the lateral tibial plateau, and emotional distress | yes | $13,000 | |
| 28 | Feist v. Taylor, 2017 WL 7689190 (Mont .Dist.) | cervical and lumbar strain and left shoulder post-traumatic impingement | no | $13,684 | * plaintiffs' motion for a new trial granted |
| 29 | Lopez v. Li, 2016 WL 8445683 (N.Y. Sup.) | disc herniations at L3-L4, L5-S1 and C5-C6, injuries to her left knee, including a grade 1 medial collateral ligament sprain, subtle chondromalacia and internal derangement, injuries to her left shoulder, including impingement, bursitis and rotator cuff tendonitis and right ankle internal derangement | no | $15,000 | |

| # | Name, Cite | Date | State | Age of Plaintiff | Type of accident | Finder of Fact |
|---|---|---|---|---|---|---|
| 30 | Morris v. Tirado, 2016 WL 4729415 (N.Y. Sup.) | 5/17/16 | NY | 24 | car accident | jury |
| 31 | Johnny v. Cruz, 2015 WL 10644865 (N.Y. Sup.) | 12/15/15 | NY | adult | car accident | jury |
| 32 | Gladysh v. Safeway Inc., 2019 WL 3712142 (Or. Cir.) | 5/30/19 | OR | adult | floor display fell on P | jury |
| 33 | Berry v. Demers, 2018 WL 1367377 (Mass. Super.) | 2/9/18 | MA | adult | car accident | jury |
| 34 | Itzkowitz v. Finkelstein, 2016 WL 2748641 (N.Y. Sup.) | 1/26/16 | NY | 26 | car accident | jury |

| # | Name, Cite | Claimed Nature of injury | Surgery | Pain & Suffering Award | Notes |
|---|---|---|---|---|---|
| 30 | <u>Morris v. Tirado</u>, 2016 WL 4729415 (N.Y. Sup.) | post traumatic headaches, reversal of the normal cervical curvature at C5-C6, cervical and lumbar radiculopathy with numbness and tingling of the hands bilaterally and right foot, as well as right shoulder rotator cuff tendinitis and impingement | no | $20,000 | |
| 31 | <u>Johnny v. Cruz</u>, 2015 WL 10644865 (N.Y. Sup.) | permanent neck and back injuries including disc herniation at L5-S1 encroaching on the S1 nerve roots, bulging discs at L4-L5 and C3-C6 deforming the thecal sac and spinal cord, and straightening of the normal cervical curvature, as well as injuries to her left shoulder including an acromion avulsion fracture, tears to the supraspinatus tendon and rotator cuff with impingement which required surgery | yes | $20,000 | |
| 32 | <u>Gladysh v. Safeway Inc.</u>, 2019 WL 3712142 (Or. Cir.) | right knee meniscus tear treated with injections and surgery, right shoulder impingement, right palm bruising, a right wrist strain and right thigh bruising | yes | $21,000 | |
| 33 | <u>Berry v. Demers</u>, 2018 WL 1367377 (Mass. Super.) | left shoulder tendonitis with impingement requiring surgery, and neck and back injuries | yes | $22,530 | |
| 34 | <u>Itzkowitz v. Finkelstein</u>, 2016 WL 2748641 (N.Y. Sup.) | bulges at C3-4, C5-6, L4-5 and L5-S1 that were confirmed by MRI with right shoulder impingement that was also supported by an MRI | no | $25,000 | |

| # | Name, Cite | Date | State | Age of Plaintiff | Type of accident | Finder of Fact |
|---|---|---|---|---|---|---|
| 35 | McCole v. Freund, 2017 WL 4280749 (N.J. Super. L.) | 1/26/17 | NJ | 45 | car accident | jury |
| 36 | Lockhart v. The Long Island Railroad Co., 2016 WL 4761418 (S.D.N.Y.) | 5/6/16 | NY | 38 | work accident | jury |
| 37 | Saget v. Saget, 2019 WL 1977300 (N.Y. Sup.) | 2/27/19 | NY | 16 | car accident | jury |
| 38 | Kerames v. Tokay Properties, L.L.C., 2017 WL 7189512 (Conn. Super.) | 10/13/17 | CT | adult | trip and fall | judge |
| 39 | Carter v. Pilla IV, 2015 WL 10553220 (N.J. Super. L.) | 12/26/15 | NJ | 55 | car accident | jury |
| 40 | Lofton v. James, 2018 WL 1867016 (Fla. Cir. Ct.) | 1/9/18 | FL | 30 | car accident | jury |

| # | Name, Cite | Claimed Nature of injury | Surgery | Pain & Suffering Award | Notes |
|---|---|---|---|---|---|
| 35 | McCole v. Freund, 2017 WL 4280749 (N.J. Super. L.) | torn rotator cuff requiring arthroscopic surgery and distal clavicle resection and resulting in impingement syndrome, and bulging cervical discs | yes | $25,000 | |
| 36 | Lockhart v. The Long Island Railroad Co., 2016 WL 4761418 (S.D.N.Y.) | partial thickness tear of the right distal supraspinatus tendon with tendinitis, impingement syndrome and a partial tear of the right bicep tendon | no | $25,000 | |
| 37 | Saget v. Saget, 2019 WL 1977300 (N.Y. Sup.) | post concussive syndrome, a fracture of her mid-left clavicle, left shoulder bursitis, a left thigh laceration, L5-S1 herniations, and L1-L5 bulges | no | $25,000 | |
| 38 | Kerames v. Tokay Properties, L.L.C., 2017 WL 7189512 (Conn. Super.) | aggravation of pre-existing left thumb osteoarthritis, a left thumb sprain, right and left knee abrasions and contusions, left shoulder impingement, and trauma to the left side of his torso | no | $30,000 | |
| 39 | Carter v. Pilla IV, 2015 WL 10553220 (N.J. Super. L.) | herniated discs at C3-C4 and C5-C6, right shoulder supraspinatus impingement and tendinitis, and cervical and thoracolumbar strains | no | $30,000 | |
| 40 | Lofton v. James, 2018 WL 1867016 (Fla. Cir. Ct.) | right elbow fracture and right shoulder impingement with myofascial pain. | no | $30,000 | |

| # | Name, Cite | Date | State | Age of Plaintiff | Type of accident | Finder of Fact |
|---|---|---|---|---|---|---|
| 41 | <u>Wilson v. Liberty Mutual Ins. Co.</u>, 2016 WL 10903739 (W.D. La.) | 7/8/16 | LA | adult | car accident | jury |
| 42 | <u>McNeill v. City of Auburn</u>, 2017 WL 4182391 (Wash. Super.) | 6/2/17 | WA | adult | car accident | jury |
| 43 | <u>Brown v. Chariton</u>, 2017 WL 1046031 (Ind. Super.) | 1/10/17 | IN | 39 | car accident | jury |
| 44 | <u>Thompson v. Bronchtein</u>, 2016 WL 8114434 (N.Y. Sup.) | 11/2/16 | NY | adult | car accident | jury |

| # | Name, Cite | Claimed Nature of injury | Surgery | Pain & Suffering Award | Notes |
|---|---|---|---|---|---|
| 41 | Wilson v. Liberty Mutual Ins. Co., 2016 WL 10903739 (W.D. La.) | strain to the cervical region of his spine and had exacerbated a pre-existing right shoulder impingement for which a shoulder arthroscopy and open clavicle excision had been recommended | no | $30,000 | |
| 42 | McNeill v. City of Auburn, 2017 WL 4182391 (Wash. Super.) | psychomotor slowing with reduced processing, chronic pain syndrome, right and left knee meniscal tears, a left rotator cuff tear of the supraspinatus tendon, right rotator cuff bursitis and inflammation, anxiety and sleep disturbance | no | $45,000 | |
| 43 | Brown v. Chariton, 2017 WL 1046031 (Ind. Super.) | C5-C6 disc herniation, cervical radiculopathy, right shoulder pain associated with supraspinatus tendon impingement and tendinosis, wrist pain, and emotional distress | no | $55,000 | |
| 44 | Thompson v. Bronchtein, 2016 WL 8114434 (N.Y. Sup.) | partial tear of his distal supraspinatus tendon with bony impingement, joint space narrowing and joint space effusion, fraying and tearing of the glenoid labrum, a partial rotator cuff tear, bicep tendinopathy, hypertrophic synovitis, a Type I labral tear, cervical myofacsitis, cervical and lumbosacral spine derangement, myofascial neck pain syndrome, right shoulder derangement and cervical, lumbar and right shoulder sprain/strains | no | $65,000 | |

| # | Name, Cite | Date | State | Age of Plaintiff | Type of accident | Finder of Fact |
|---|---|---|---|---|---|---|
| 45 | Thomas v. NYLL Management Ltd., 2016 WL 8316934 (N.Y. Sup.) | 11/18/16 | NY | adult | car accident | jury |
| 46 | Tucci v. Allstate, 2016 WL 6883238 (N.J. Super. L.) | 9/28/16 | NJ | adult | car accident, uninsured motorist and wrongly withheld ins. benefits | jury |
| 47 | Walker v. Calvo, 2017 WL 3070753 (N.Y. Sup.) | 6/2/17 | NY | 20 | car accident | jury |
| 48 | Perry v. Berroa, 2017 WL 6883949 (Va. Cir. Ct.) | 4/4/17 | VA | adult | car accident | jury |

| # | Name, Cite | Claimed Nature of injury | Surgery | Pain & Suffering Award | Notes |
|---|---|---|---|---|---|
| 45 | Thomas v. NYLL Management Ltd., 2016 WL 8316934 (N.Y. Sup.) | deformity of the posterior glenoid rim of the left shoulder with traumatic subacromial impingement, requiring surgery; acromioclavicular joint arthropathy, anterior capsular contracture, glenohumeral reactive hypertrophic injected synovitis, grade 3-4 glenoid chondral injury with multiple loose chondral flaps, labral fraying, fluid in the subdeltoid bursa and subcapularis bursa, C5-C6 stenosis with spurring, and straightening of the cervical curvature | yes | $65,000 | |
| 46 | Tucci v. Allstate, 2016 WL 6883238 (N.J. Super. L.) | C5-C6 disc herniation which resulted in cervical radiculopathy, a chip fracture of her cervical spine, a concussion leading to post concussion syndrome, left knee internal derangement, right shoulder impingement syndrome, TMJ, thoracic and lumbar strains, right knee sprain and contusions to her left leg | no | $75,000 | * judge reduced to $50,000 |
| 47 | Walker v. Calvo, 2017 WL 3070753 (N.Y. Sup.) | disc bulges at C4-C6 and L4-L5, a sprained right knee ACL, right shoulder rotator cuff tears and impingement, right shoulder and cervical/lumbar strains | no | $75,000 | |
| 48 | Perry v. Berroa, 2017 WL 6883949 (Va. Cir. Ct.) | post traumatic headaches and left shoulder post-traumatic bursitis and tendinitis, as well as left hand pain and numbness, back, left elbow, and left-sided neck pain | no | $76,000 | |

| # | Name, Cite | Date | State | Age of Plaintiff | Type of accident | Finder of Fact |
|---|---|---|---|---|---|---|
| 49 | <u>Jauregui v. Walgreen</u>, 2017 WL 5068477 (Cal. Super.) | 7/21/17 | CA | adult | slip and fall | jury |
| 50 | <u>Nappa v. Emmons</u>, 2016 WL 3461669 (N.J. Super. L.) | 3/3/16 | NJ | 60 | car accident | jury |
| 51 | <u>Lott v. Bromfield</u>, 2017 WL 2560567 (N.Y. Sup.) | 5/3/17 | NY | adult | pedestrian hit by car | jury |

| # | Name, Cite | Claimed Nature of injury | Surgery | Pain & Suffering Award | Notes |
|---|---|---|---|---|---|
| 49 | Jauregui v. Walgreen, 2017 WL 5068477 (Cal. Super.) | protruding discs at C3-C4 and C5-C6 with encroachment on the spinal cord which required anterior cervical discectomy with fusion; post traumatic migraine headaches with dizziness and nausea; left shoulder tendon damage with impingement which required glenohumeral arthroscopy and subacromial decompression surgeries; chin lacerations which required stitches and resulted in permanent scarring, as well as depression and anxiety | yes | $87,500 | |
| 50 | Nappa v. Emmons, 2016 WL 3461669 (N.J. Super. L.) | bilateral carpal tunnel syndrome which required surgery, disc bulging at C3-C5 and C6-C7 and disc herniation with foraminal narrowing at C5-C6 which required epidural injections, aggravation of a preexisting lower back injury and left shoulder impingement | yes | $90,000 | |
| 51 | Lott v. Bromfield, 2017 WL 2560567 (N.Y. Sup.) | herniations at L3-S1, sacroiliac joint infections, traumatic paracervical and paralumbar myofascitis, right rotator cuff and glenoid labrum tears, partial thickness tears of the right supraspinous tendon, and right shoulder impingement. He also allegedly suffered a Hill-Sachs compression fracture of the right humeral head, fracture of the left radius, joint hypertrophy in his left shoulder, bowing of the right medial collateral ligament, lateral and medial meniscus tears, edema within the right medial femoral condyle, with a chondral defect, and medial and patellofemoral arthritis of the right knee | no | $90,000 | |

| # | Name, Cite | Date | State | Age of Plaintiff | Type of accident | Finder of Fact |
|---|---|---|---|---|---|---|
| 52 | Azoolay v. GEICO, 2016 WL 2597554 (N.J. Super. L.) | 2/23/16 | NJ | 59 | car accident | jury |
| 53 | Johnson, Jr. v. Armstrong, 2017 WL 8772007 (Va. Cir. Ct.) | 4/6/17 | VA | adult | car accident | jury |
| 54 | Eskridge v. Sutter, 2017 WL 7410269 (E.D. Mich.) | 12/1/17 | MI | 43 | car accident | jury |
| 55 | Daley v. Matthews, 2016 WL 4627014 (N.Y. Sup.) | 5/16/16 | NY | adult | car accident | jury |

| # | Name, Cite | Claimed Nature of injury | Surgery | Pain & Suffering Award | Notes |
|---|---|---|---|---|---|
| 52 | Azoolay v. GEICO, 2016 WL 2597554 (N.J. Super. L.) | herniated discs at C4-C5, C5-C6 and C6-C7, a cervical strain and a left shoulder rotator cuff tear with impingement syndrome | no | $100,000 | reduced to $75,0( |
| 53 | Johnson, Jr. v. Armstrong, 2017 WL 8772007 (Va. Cir. Ct.) | newly developed and/or exacerbated shoulder impingement syndrome, a cervical spine disc injury, an axial disc injury, emotional injury/anxiety, scarring, disfigurement, and humiliation | no | $115,000 | |
| 54 | Eskridge v. Sutter, 2017 WL 7410269 (E.D. Mich.) | injuries to her left shoulder, including internal derangement, impingement, AC joint arthrosis, a rotator cuff tear, a SLAP tear, tendinitis and reactive synovitis, disc herniations, cervical and lumbar radiculopathy, stenosis, concussion leading to post concussion syndrome, adjustment disorder and post traumatic stress disorder | no | $130,000 | |
| 55 | Daley v. Matthews, 2016 WL 4627014 (N.Y. Sup.) | tear of the left wrist dorsal capsuloligamentous complex, a right rotator cuff injury and impingement syndrome, and cervical, thoracic and lumbar strains | no | $188,000 | |

| # | Name, Cite | Date | State | Age of Plaintiff | Type of accident | Finder of Fact |
|---|---|---|---|---|---|---|
| | | | | | | |
| | mean | $31,105.89 | | | | |
| | median | $13,000.00 | | | | |
| | Q1 | $7,500.00 | | | | |
| | Q3 | $30,000.00 | | | | |
| | center of intraquatrile range | $22,500.00 | | | | |